JOSEPH S. ORAM, DEFENDANT IN ERROR, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEW BRUNSWICK, PLAINTIFFS IN ERROR.

Argued June 20, 1901—Decided November 15, 1901.

1. Under the act creating a commission for streets and sewers in the city of New Brunswick (*Pamph. L.* 1871, *p.* 795) and its supplements, the municipal corporation itself did not become indebted to the commissioners for their salaries.

2. Under the general act (*Pamph. L.* 1888, *p.* 29; *Gen. Stat., p.* 640), in pursuance of which the commission was abolished, the municipal corporation did not become chargeable in an action at law for the salaries of the commissioners. *Scaine* v. *Belleville*, 10 *Vroom* 526, distinguished.

On error.

For the plaintiffs in error, *Frederick Weigel* and *Willard P. Voorhees.*

For the defendant in error, *George S. Silzer* and *Robert Adrain.*

The opinion of the court was delivered by

DIXON, J. The plaintiff held office as a commissioner of streets and sewers in the city of New Brunswick during the term between May 1st, 1881, and May 1st, 1886, under the act creating such commission (*Pamph. L.* 1871, *p.* 795) and its supplements. During his term he received an annual salary of $1,000, in accordance with the supplement of April 11th, 1876 (*Pamph. L., p.* 496), but in the year 1898, having concluded that the supplement of 1876 was unconstitutional (as it has been adjudged to be: 35 *Vroom* 19), he brought this suit against the mayor and common council of the city of New Brunswick to recover the balance of the annual salary of $1,500 fixed by the act of 1871. At trial of the issue in the Middlesex Circuit he obtained a verdict, and this writ of error is prosecuted to reverse the judgment entered on that verdict, because of errors committed at the trial and duly certified by bills of exception. These bills present the general question whether, under the pleadings and evidence, the plaintiff showed himself entitled to recover. The answer to this question is to be found after consideration of the original act of 1871, the supplements of 1873 (*Pamph. L., p.* 397) and 1874 (*Id., p.* 478) and a general law approved February 14th, 1888. *Id., p.* 29; *Gen. Stat., p.* 640.

The legislative scheme disclosed by the special acts of 1871, 1873 and 1874 was that the commission should have power

to improve streets and construct public sewers in the city of New Brunswick, and, in order to provide funds therefor, was authorized to issue bonds to the amount of $1,000,000, in the name of the commission, but pledging for the redemption thereof the faith and credit of "the mayor and common council of the city of New Brunswick;" the commission was also authorized to levy assessments on property benefited by their improvements, but these assessments were made a fund for the redemption of the bonds issued, except that assessments as collected were to be invested in certain securities, and the interest accruing on these securities was to be subject to draft by the commission. In case any improvement made by the commission benefited property owned by the municipal corporation, that corporation was to pay to the commission an equivalent for such benefit, and the municipal corporation was also to pay to the commission one-half of the cost of repaving streets and one-fourth of the cost of constructing sewers.

Out of the funds thus coming under the control of the commission, it was to pay for all the improvements executed by it, all the expenses incident thereto, including the salaries of the commissioners and the interest upon the bonds issued by them. The commission was invested with a capacity to sue and be sued, and thus acquired a *quasi* corporate existence. But it received no governmental power, except as above stated, and had no power to tax beyond assessing for benefits.

The statutes cited evince no design on the part of the legislature to impose any obligation upon the municipal corporation, except to pay the bonds issued by the commission, with the aid of assessments collected; to pay the value of benefits conferred on city property, and to pay the designated proportions of the cost of repaving streets and constructing sewers.

Thus we have the commission as the sole debtor for all the expenses incurred by its operations, including the salaries of the commissioners, and definite funds out of which those expenses are to be met, and no authority to augment the funds through taxation, or otherwise, without further legislation. In this state of the law a creditor of the commission could not

establish any legally collectible claim beyond the scope of the designated funds, and certainly could not show himself to be a creditor of the municipal corporation.

This being the posture of affairs, the legislature passed the act of 1888, according to the terms of which, when the legal voters of the city accepted the act, as they afterwards did, the exclusive power to improve streets and build public sewers in the city was invested in the common council, the commission of streets and sewers was abolished, and the city collector was required to collect the assessments then remaining unpaid, for the use of the city. The act contains no further provision touching the present controversy.

Whether this act effectually abolished the commission, or whether the commission still remained as a legal entity, with its capacity to sue and be sued, in order that it might answer to the claims of its creditors, is a question which certainly admits of debate, in view of our constitutional provision forbidding the passage of any law to deprive parties of their remedies upon contracts, but which need not now be answered. The pertinent fact at present is that the act does not declare a purpose to substitute the municipal corporation as the legal debtor instead of the commission.

If the commission still in legal theory exists, then its creditors must assert their legal claims against it, and compel it to obtain the funds yet available, if there be any, to meet their claims.

But the plaintiff contends that the commission was, under the act of 1888, legally abolished, and that, on the principle laid down in *Scaine* v. *Belleville,* 10 *Vroom* 526, we should infer that the obligations of the commission have been imposed by that act upon the municipal corporation.

In the case just cited a certain territory and its inhabitants had existed as a corporate township of Belleville, with the power to contract debts and levy taxes for their payment; then the legislature passed an act forming the same territory and its inhabitants into the corporate city of Belleville, with like power to contract debts and levy taxes; the city of Belleville contracted debts, but before they were paid the statute

mentioned was repealed, and thus the corporate township was revived; and our Supreme Court held that a legislative purpose to charge the township with the city's debt was inferrible from such revival.

This case differs essentially from that now before us. There the township and city corporations were, in substance, the same, the designated territory and its inhabitants—only the name and functions were changed; and in each there resided the same power of taxation as the substantial remedy of creditors. Therefore it was easy for the court to infer that, as the legislature had preserved this power of taxation and had merely transferred it to other agencies, the power was still to be exerted by those agencies for the satisfaction of creditors who were constitutionally entitled to have it exercised, and that, as a step toward that end, the corporate municipality was suable by its new name.

But here there was no substantial identity between the commission and the municipality, and there was no power of taxation resident in the commission to be transferred to the municipality. If, indeed, the commission did not issue bonds to the full amount permitted, or if it did not collect from the municipality all the moneys due according to the statutes, the residue of this statutory responsibility might be reached by creditors of the defunct commission through proper proceedings against the municipality; but the present action is not appropriate for such limited relief. Creditors of a dissolved corporation cannot charge the debtors of the corporation in an ordinary action at law; the corporate assets must be collected and distributed by a different method.

In view of the limited character of the rights of creditors of the commission, it would be necessary to infer that the legislature intended, by the act of 1888, to enlarge, not merely to preserve, their remedies, before we could conclude that, by that act, the municipal corporation, with its general power of taxation, had been charged with the debts of the commission. The constitution does not require such an inference, and we find no support for it.

At the trial below, when the plaintiff's evidence was closed,

the defendant moved for a nonsuit on the ground that the plaintiff had not shown the existence of any fund in possession of the defendant which, under the statutes, was available for payment of the salary claimed. This ground was narrower than that now taken by the court, but was included in it, and sufficiently indicated a fatal defect in the proof submitted. The motion should, therefore, have prevailed, but it was denied, and the denial was error for which the judgment must be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, DEPUE (CHIEF JUSTICE), VAN SYCKEL, DIXON, GARRISON, GUMMERE, COLLINS, GARRETSON, HENDRICKSON, BOGERT, ADAMS, VREDENBURGH, VOORHEES, VROOOM. 14